UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X

Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,

        Plaintiff,

   - against -

Excelsior Trading Corp., d/b/a Excelsior
Trading New York, L.W. Import, Inc., Highland
Trading, Inc., Tony Lam, Tung Lam, Jane Chow,
a/k/a Ms. Chow (first name unknown), and
John Does 1-10,

        Defendants.

-------------------------------------------X

07-CV-3224
(CPS)

MEMORANDUM
OPINION AND
ORDER

SIFTON, Senior Judge.

  Plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
brings this action against defendants Excelsior Trading Corp.,
d/b/a Excelsior Trading New York; L.W. Import, Inc.; Highland
Trading, Inc., Tony Lam; Tung Lam; Jane Chow, a/k/a Ms. Chow
(first name unknown); and John Does 1-10.  In the Complaint,
plaintiff alleges that defendants engaged in (1) trademark
infringement, pursuant to 15 U.S.C. § 1114; (2) counterfeiting,
pursuant to 15 U.S.C. § 1116; (3) trade dress infringement,
pursuant to 15 U.S.C. § 1125(a); (4) unfair competition, pursuant
to 15 U.S.C. § 1125(a); (5) dilution, under NY Gen. Bus. Law,
Section 360-L; and (6) common law unfair competition.  On August
6, 2007 this Court granted plaintiff's motion for an *ex-parte*
seizure order, pursuant to 15 U.S.C. § 1116, and motion for a
temporary restraining order.   Now before this Court is

-2-

plaintiff's motion for an order confirming the seizure.  On
August 16, 2007 a post-seizure hearing was conducted before the
undersigned. Based on the findings of fact and conclusions of law
set forth below, plaintiff's motion is granted.

**Background**

The following facts are derived from plaintiff's Complaint
and papers submitted in support of this motion along with the
testimony and evidence received at the post-seizure hearing.  At
this stage of the proceeding, the facts are not disputed.[1]

*Plaintiff's Business and Trademarks*

Plaintiff, a Hong Kong company, manufactures and distributes
Cantonese food products such as sauces and seasonings under the
name Koon Chun.  These products are manufactured in Hong Kong and
sold to exporters who buy the products on behalf of distributors
around the world.  The United States is one of plaintiff's
largest markets.

Plaintiff has a registered trademark featuring a distinctive
design that is used on all Koon Chun products, that it uses in
conjunction with distinctive colors and shapes (including the
shape of an antique Chinese wine glass) on product labels (the
"trade dress"), which serve to distinguish the products for

---

[1] Named defendants Tung Lam and Jane Chow appeared at the hearing
without an attorney.  Because the individual defendants were granted time to
obtain the assistance of a lawyer, the determination made herein is made
without prejudice to an application to vacate this order once defendants have
a lawyer.

-3-

consumers.  The label design has become widely associated by
consumers and industry with plaintiff, whose products have a
reputation for quality and significant sales and growth, and
plaintiff enjoys substantial goodwill from the label design owing
to the length of use and the design's distinctive nature.[2]
Accordingly, the trademarks are an important business asset and
monetary damages cannot compensate plaintiff for injury suffered
from the loss of reputation and goodwill that result from
unauthorized use of its trademark.

*Defendants' Activities*

       According to plaintiff, there exists an illicit industry
manufacturing, importing, distributing and selling unauthorized
versions of products of the type made by plaintiff bearing
counterfeit versions or colorable imitations of plaintiff's
trademark.  Over the last several years, since discovering that
such counterfeiting was going on, plaintiff has initiated several
actions to halt these activities and has, on order of appropriate
courts, seized many counterfeit items as a result.  These
seizures included a seizure authorized by this Court on July 18,
2007, during which 17 cases of counterfeit Koon Chun products
were recovered.  In the current action, plaintiff alleges that
the defendants have engaged in selling counterfeit products

_____

       [2] The trademark has been in use since 1927 and the current design of the
product labels has been in use for over ten years.

-4-

bearing plaintiff's trademark and trade dress.[3]

Koon Chun became aware (via undisclosed information on an undisclosed date) that a business by the name of Excelsior may be selling counterfeit Koon Chun products. At 8:30 AM on July 30, 2007, plaintiff's investigator went to a warehouse at 15 South 11th Street in Brooklyn, where he observed a sign reading "Excelsior Trading Co." and a telephone number of (718) 821-2199. After finding the gates locked, the investigator called the phone number from his cell phone and the call was answered by a voicemail system; he did not leave a message. At noon, the investigator returned to the location and found the door open. He informed a Chinese male employee at the location that he wished to purchase 10 cases of various sauce products. The employee led him into an office and introduced him to a Chinese female employee who would take the order. The investigator then ordered 3 cases of Koon Chun Hoisin sauce, 2 cases of Koon Chun Ground Bean sauce, 2 cases of Koon Chun Thin Soy sauce, 2 cases of Koon Chun Double Black Soy Sauce, and 2 cases of Lee Kum Kee Panda brand Oyster sauce. The female employee wrote out an invoice by hand, with product descriptions but without brand names or the name of the her company, and gave a copy to the investigator. The investigator paid $240 in cash and asked for a

---

[3] According to the Complaint, the corporate defendants all share the same location and the individual defendants are principals and/or owners of the corporate defendants. Other than defendant Excelsior, plaintiff has not explained how they learned of the other corporate defendants.

-5-

company card, whereupon he was given the name card of one "Tony Lam."

While watching the male employee fill the order, the investigator saw about 240 cases labeled as Koon Chun Hoisin sauce in the warehouse.  The female employee then approached the investigator and refunded him $25 due to a price miscalculation and gave him an amended invoice.  When the investigator asked for her card, she gave him a name card with the handwritten words "Ms. Chow" on it.  The investigator then left with his purchase.

Later that day, the investigator received a call on his cell phone from a male who spoke Cantonese and asked whether the investigator had called his phone.[4]  When asked, the investigator gave his name and identified himself as an employee of Koon Chun. The caller then told the investigator to talk to someone named Tony, who came to the phone.  The investigator recalled that the president of Kung Fun Trading, a target in the July seizure, was named Tony and, concerned that his cell phone number may have appeared on Kung Fun's caller ID during his earlier investigation, he told Tony that he had dialed the wrong number and hung up the phone.[5]

---

[4] Apparently, the number dialed earlier in the day was a phone belonging to this individual.

[5] Plaintiff notes that due to the information revealed during the phone call and his cash purchase, as well as the ongoing legal activities related to the July seizure, defendants may be aware of his investigation and may have begun disposing of evidence already.

-6-

When the investigator later reviewed the products he purchased, he found that the 3 cases of Koon Chun Hoisin sauce and the 2 cases of Koon Chun Thin Soy sauce were counterfeit, though they contained trademarks indistinguishable from authentic Koon Chun trademarks.[6] According to Koon Chun, the boxes of these products were hand-glued, in contrast to authentic Koon Chun boxes which are machine glued.  In addition, the number "1" on the date/time stamp on the counterfeit products have a short horizontal line at the bottom of the number, while authentic Koon Chun products have no such line.  Further, there was rust on the counterfeit cans of thin soy sauce, which, according to the date/time stamp, was produced in August 2006.  According to plaintiff, the rust is the sign of inferior packaging material and that there would be no such rust on an authentic Koon Chun product made only a year ago.[7]

The undersigned granted a seizure order and temporary restraining order against defendants on August 6, 2007 and signed an order to show cause as to the present motion, returnable August 16, 2007. As established at the post-seizure hearing, pursuant to the seizure order, on August 14, 2007 the United States Marshals seized 170 cases and 3 cans of counterfeit Koon

---

[6] Apparently, the other products were authentic.

[7] Plaintiff also notes that the date/time stamp on the purchased products lists the same date as the date on products seized in another counterfeiting case pursued by plaintiffs, indicating that the products may be from the same source.

–7–

Chun hoisin sauce, 66 cans of counterfeit Koon Chun double black
soy sauce, and various related documents from 15 South 11th
Street, Brooklyn.[8]  On August 14, 2007, at the time of the
seizure at 15 South 11th Street, Brooklyn, NY, the United States
Marshals personally served a copy of the order to show cause on
Tung Lam and Jane Chow.  Tung Lam and Jane Chow were served in
their capacity as both individually named defendants and agents
of the defendant corporations, Excelsior Trading Corp., L.W.
Import, Inc., and Highland Trading, Inc.

**Discussion**

*Confirmation of Seizure*

> 15 U.S.C. § 1116(d)(10)(A) states:
> The court shall hold a hearing, unless waived by all
> the parties, on the date set by the court in the order
> of seizure.  That date shall be not sooner than ten
> days after the order is issued and not later than
> fifteen days after the order is issued, unless the
> applicant for the order shows good cause for another
> date or unless the party against whom such order is
> directed consents to another date for such hearing.  At
> such hearing the party obtaining the order shall have
> the burden to prove that the facts supporting findings
> of fact and conclusions of law necessary to support
> such order are still in effect. If that party fails to
> meet that burden, the seizure order shall be dissolved
> or modified appropriately.

---

[8] A handwritten list of documents and items seized has been provided to
the Court, which includes Excelsior Trading price lists, Excelsior Trading
invoices, purchase statements, and one copy of a computer hard disc. Raymond
Chan, a Koon Chun employee who testified at the post-seizure hearing, states
that all of the seized documents make reference to Koon Chun products.

-8-

In determining whether to grant the seizure order, I evaluated the plaintiff's submissions pursuant to 15 U.S.C. § 1116(d)(4)(B), which required me to find that:

(I) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of section 1114 of this title;
(ii) the applicant has not publicized the requested seizure;
(iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;
(iv) an immediate and irreparable injury will occur if such seizure is not ordered;
(v) the matter to be seized will be located at the place identified in the application;
(vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and
(vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

Since plaintiff seized more than 200 counterfeit items through the seizure process, those items, as well as documents recovered which refer to commerce in goods bearing plaintiff's trademarks, I confirm my finding that the location described in the seizure order was likely to contain evidence of defendants' counterfeiting operation.  Since there have been no subsequent disclosures or arguments which would alter my other findings and conclusions, I hereby confirm the seizure order, as set out in the accompanying order.

-9-

## Conclusion

For the reasons set forth above, and as set forth in the accompanying order, plaintiff's motion is granted.  The Clerk is directed to transmit a filed copy of the within to all parties and the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
          August 16, 2007

Time: 12:00 pm


                    By: /s/ Charles P. Sifton (electronically signed)
                              United States District Judge