UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,

                     Plaintiff,

     - against -

Excelsior Trading Corp., d/b/a Excelsior
Trading New York, L.W. Import, Inc., Highland
Trading, Inc., Tony Lam, Tung Lam a/k/a Tony
Lam, Jane Chow a/k/a Ms. Chow, first name
unknown, and John Does 1-10,

                     Defendants.

------------------------------------------X

07-CV-3224
(CPS)(SMG)

MEMORANDUM
OPINION AND
ORDER

SIFTON, Senior Judge.

     Plaintiff Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,

brings this action against defendants Excelsior Trading Corp.

d/b/a Excelsior Trading New York; L.W. Import, Inc.; Highland

Trading, Inc.; Tony Lam; Tung Lam a/k/a Tony Lam; Mandy Chow

a/k/a Jane Chow a/k/a Ms. Chow; and John Does 1-10.  In the

Complaint, plaintiff alleges that defendants engaged in (1)

trademark infringement, pursuant to 15 U.S.C. § 1114; (2)

counterfeiting, pursuant to 15 U.S.C. § 1116; (3) trade dress

infringement, pursuant to 15 U.S.C. § 1125(a); (4) unfair

competition, pursuant to 15 U.S.C. § 1125(a); (5) dilution, under

NY Gen. Bus. Law, Section 360-L; and (6) common law unfair

competition.

     On August 6, 2007 the undersigned granted plaintiff's motion

for an *ex-parte* seizure order, and also granted plaintiff's

motion for a temporary restraining order, effective from the date of seizure.  The seizure was conducted on August 14, 2007 and confirmed by this Court after a hearing on August 16, 2007, on which date the temporary restraining order was extended until September 4, 2007.  On August 31, 2007, the parties consented to a further extension of the temporary restraining until September 18, 2007, which was ordered by the Court on September 13, 2007.

Now before this Court is plaintiff's motion for a preliminary injunction against all defendants.  Upon the findings of fact and conclusions of law set forth below, this motion is granted against Excelsior Trading Corp., Tony Lam, Tung Lam, and Mandy Chow and denied as to defendants L.W. Import, Inc., and Highland Trading, Inc.

## Background

The following findings of facts are derived from the underlying allegations in plaintiff's Complaint, affidavits submitted by plaintiff in connection with this motion, and from proceedings before the undersigned on August 16, 2007 and September 18, 2007.  There are no factual disputes between the parties requiring an evidentiary hearing.  *See Davis v. New York*

*City Housing Authority*, 166 F.3d 432, 437-38 (2d Cir.1999).[1]

*Plaintiff's Business and Trademarks*

Plaintiff, a Hong Kong company, manufactures and distributes Cantonese food products such as sauces and seasonings under the name Koon Chun.  These products are manufactured in Hong Kong and sold to exporters who buy the products on behalf of distributors around the world.  The United States is one of plaintiff's largest markets.

Since September 1986, Plaintiff has been the owner of a trademark registered with the United States Patent and Trademark Office, featuring a distinctive design that is used on all Koon Chun products and in conjunction with distinctive colors and shapes (including the shape of an antique Chinese wine glass) on product labels (the "trade dress"), which serves to distinguish the products for consumers.  The label design has become associated by consumers and industry with plaintiff, and plaintiff enjoys substantial goodwill from the label design owing to the length of use and the design's distinctive nature.[2]

*Defendants' Activities*

There exists an illicit industry manufacturing, importing, distributing and selling unauthorized versions of products of the

---

[1] Defendants do not oppose plaintiff's motion for a preliminary injunction.

[2] The trademark has been in use since 1927 and the current design of the product labels has been in use for over ten years.

type made by plaintiff bearing counterfeit versions or colorable
imitations of plaintiff's trademark in the United States.  Over
the last several years, since discovering that such
counterfeiting was going on, plaintiff has initiated several
actions in United States courts to halt these activities and has,
on order of appropriate courts, seized a substantial number of
counterfeit items. In the current action, plaintiff alleges that
the defendants have engaged in selling counterfeit products
bearing plaintiff's trademark and trade dress.[3]

Koon Chun became aware (via an undisclosed source on an
undisclosed date) that a business by the name of Excelsior was
selling counterfeit Koon Chun products.  At 8:30 AM on July 30,
2007, plaintiff's investigator went to a warehouse at 15 South
11th Street in Brooklyn, where he observed a sign reading
"Excelsior Trading Co." and a telephone number of (718) 821-2199.
After finding the gates locked, the investigator called the phone
number from his cell phone and the call was answered by a
voicemail system; he did not leave a message.  At noon, the
investigator returned to the location and found the door open.
He informed a Chinese male employee at the location that he
wished to purchase 10 cases of various sauce products.  The
employee led him into an office and introduced him to a Chinese

---

[3] According to the Complaint, the corporate defendants all share the
same location and the individual defendants are principals and/or owners of
the corporate defendants.  Other than defendant Excelsior, plaintiff has not
explained how they learned of the other corporate defendants.

female employee to take the order. The investigator then ordered
3 cases of Koon Chun Hoisin sauce, 2 cases of Koon Chun Ground
Bean sauce, 2 cases of Koon Chun Thin Soy sauce, 2 cases of Koon
Chun Double Black Soy Sauce, and 2 cases of Lee Kum Kee Panda
brand Oyster sauce. The female employee wrote out an invoice by
hand, with product descriptions but without brand names or the
name of the her company, and gave a copy to the investigator.
The investigator paid $240 in cash and asked for a company card,
whereupon he was given the name card of one "Tony Lam."

While watching the male employee fill the order, the
investigator saw about 240 cases labeled as Koon Chun Hoisin
sauce in the warehouse. The female employee then approached the
investigator and refunded him $25 due to a price miscalculation
and gave him an amended invoice. When the investigator asked for
her card, she gave him a name card with the handwritten words
"Ms. Chow" on it. The investigator then left with his purchase.

Later that day, the investigator received a call on his cell
phone from a male who spoke Cantonese and asked whether the
investigator had called his phone.[4] When asked, the investigator
gave his name and identified himself as an employee of Koon Chun.
The caller then told the investigator to talk to someone named
Tony, who came to the phone. The investigator recalled that the

---

[4] Apparently, the number dialed earlier in the day was a phone belonging to
this individual.

president of Kung Fun Trading, a target in the July seizure, was named Tony and, concerned that his cell phone number may have appeared on Kung Fun's caller ID during his earlier investigation, he told Tony that he had dialed the wrong number and hung up the phone.

When the investigator later reviewed the products he purchased, he found that the 3 cases of Koon Chun Hoisin sauce and the 2 cases of Koon Chun Thin Soy sauce were counterfeit, though they contained trademarks indistinguishable from authentic Koon Chun trademarks.[5]  According to Koon Chun, the boxes of these products were hand-glued, in contrast to authentic Koon Chun boxes which are machine glued.  In addition, the number "1" on the date/time stamp on the counterfeit products have a short horizontal line at the bottom of the number, while authentic Koon Chun products have no such line.  Further, there was rust on the counterfeit cans of thin soy sauce, which, according to the date/time stamp, was produced in August 2006.  According to plaintiff, the rust is the sign of inferior packaging material and that there would be no such rust on an authentic Koon Chun product made only a year ago.[6]

The undersigned granted a seizure order and temporary

---

[5] Apparently, the other products were authentic.

[6] Plaintiff also notes that the date/time stamp on the purchased products lists the same date as the date on products seized in another counterfeiting case pursued by plaintiffs, indicating that the products may be from the same source.

restraining order against defendants on August 6, 2007 and signed
an order to show cause as to the present motion, returnable
August 16, 2007. As confirmed at the post-seizure hearing, on
August 14, 2007, the United States Marshals seized 170 cases and
3 cans of counterfeit Koon Chun hoisin sauce, 66 cans of
counterfeit Koon Chun double black soy sauce, and various related
documents from 15 South 11[7]th Street, Brooklyn. On August 14,
2007, at the time of the seizure at 15 South 11th Street,
Brooklyn, NY, the United States Marshals personally served a copy
of the order to show cause on Tung Lam and Mandy Chow. Tung Lam
and Mandy Chow were served as both individually named defendants
and in their capacity as agents of defendant corporations,
Excelsior Trading Corp., L.W. Import, Inc., and Highland Trading,
Inc.

## Discussion

Plaintiff moves for a preliminary injunction barring
defendants and all those acting in concert with them from making
unauthorized use of plaintiff's trademark; manufacturing,

---

[7] A handwritten list of documents and items seized was provided to the
Court, which includes Excelsior Trading price lists, Excelsior Trading invoices,
purchase statements, and one copy of a computer hard disc. Raymond Chan, a Koon
Chun employee testified at the seizure confirmation hearing that all of the seized
documents make reference to Koon Chun products.

distributing or facilitating the commerce in counterfeit products bearing plaintiff's trademark; disposing of any merchandise bearing an unauthorized copy of plaintiff's trademark and instead delivering such items to plaintiff; disposing of any records relating to commerce in items bearing plaintiff's trademark; destroying or modifying counterfeit products or documents related to those products; and from notifying suppliers of the counterfeit products that a seizure has occurred or otherwise assisting others engaged in the production, distribution or sale of counterfeit products bearing plaintiff's trademark.

Pursuant to Federal Rule of Civil Procedure 65(a), a preliminary injunction is appropriate if the movant shows (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir. 1996).

Courts have repeatedly held that damages to a business's goodwill as a result of unauthorized trademark usage are not readily quantifiable and, thus, constitute irreparable harm. *See Dunkin' Donuts Incorporated v. Albireh Donuts, Inc.*, 96 F.Supp.2d 146, 149 (N.D.N.Y. 2000). Trademark laws are designed to protect the public from confusion over the source of goods or services.

*See Hermes International v. Lederer de Paris Fifth Avenue, Inc.*, 219 F.3d 104, 107-108 (2d Cir. 2000). Where the party seeking a preliminary injunction in a trademark case shows that it will "lose control over the reputation of its trademark pending trial," the requirement of irreparable injury is satisfied. *Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985). A trademark "epitomizes the goodwill of a business. This creation and perpetuation of goodwill depends on customer recognition. The nature of goodwill is dictated by the consumer's desire to do business with the same seller. The buyer expects the same experience with each purchase - this is the reason d'etre for the sale." *Id*. at 97.

In cases involving counterfeit marks, "the Court need not undertake a factor-by-factor analysis under *[Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961),]* because counterfeits, by their very nature, cause confusion." *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003).

In the present case, plaintiff argues that sufficient testimony and physical evidence has been produced to support a finding that defendants are likely to be shown to have engaged in a scheme to sell, distribute, and manufacture counterfeit products using the Koon Chun trademark (or a mark substantially similar).

A large quantity of counterfeit Koon Chun goods along with price lists and invoices referring to Koon Chun products have been seized from Excelsior's 15 South 11th Street, Brooklyn address.  *See* Seizure Confirmation Order, dated August 16, 2007. Plaintiff has offered testimony and produced evidence that Mandy Chow sold counterfeit Koon Chun products to Koon Chun's investigator on behalf of defendant Excelsior.  *See* Declaration of Raymond Chan, ¶¶ 33-49, Plaintiff Exhibits M and N.  Plaintiff has produced evidence that Tony Lam is the president of Excelsior Trading Co., the company that sold the counterfeit Koon Chun products to plaintiff. Plaintiff Exhibit L.  Plaintiff also provided testimony that both Mandy Chow and Tung Lam were present at Excelsior's warehouse at the time of the seizure.  Therefore, plaintiff has produced enough evidence to demonstrate that defendants Excelsior Trading Co., Mandy Chow, Tony Lam, and Tung Lam are likely to be shown to have engaged in a scheme to sell, distribute, and manufacture counterfeit Koon Chun products at the trial of this matter.  Accordingly, so long as defendants Excelsior Trading Co., Mandy Chow, Tony Lam, and Tung Lam continue to engage in practices which support the manufacture, sale and distribution of counterfeit Koon Chun products, plaintiff is being irreparably harmed by the trademark

infringement.[8] *See Matter of Vuitton et Fils, S.A.*, 606 F.2d 1, 4 (finding that "[i]n a trademark infringement case, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient.").

Plaintiff, however, has not provided sufficient evidence against corporate defendants L.W. Import, Inc., and Highland Trading, Inc., to permit the court to conclude that it will also be able to show at the trial of this matter that they are engaged in a scheme to sell, distribute, and manufacture counterfeit Koon Chun products. Plaintiff's only evidence against L.W. Import, Inc. and Highland Trading, Inc., is that Tony Lam is the president of both L.W. Import, Inc. and Highland Trading, Inc. and that their offices are located in the same building as Excelsior Trading Corp. Plaintiff Exhibit L. No other evidence has been provided to establish that these two companies are likely to be shown to have engaged in a scheme to sell, distribute, and manufacture counterfeit Koon Chun products at the trial of this matter. Therefore, plaintiff has failed to demonstrate that it is likely to succeed on the merits against L.W. Import, Inc. or Highland Trading, Inc., at the trial of this matter. For the same reasons, plaintiff has not shown irreparable harm by defendants L.W. Import, Inc. and Highland

---

[8] Such practices include not only defendant's production or sale of counterfeit goods but also the destruction of evidence which may lead to the discovery of other participants.

Trading, Inc.

Accordingly, based on the above findings of fact and conclusions of law, and as set out in the accompanying order, the motion for a preliminary injunction against Excelsior Trading Corp., Tony Lam, Tung Lam, and Mandy Chow is granted and denied as to defendants L.W. Import, Inc. and Highland Trading, Inc. [9]

## Conclusion

For the reasons set forth above, and as set forth in the accompanying order, plaintiff's motion for a preliminary

---

[9] The accompanying order substantially conforms to plaintiff's proposed order. However, plaintiff has requested that I enjoin defendants and their agents from contacting or otherwise notifying suppliers of infringing products that a seizure has occurred. Such language is an overly broad prior restraint on defendants' right to free speech and to prepare for trial and, accordingly, is not included in the accompanying order. *See Levine v. U.S. Dist. Court for Cent. Dist. of California,* 764 F.2d 590 (9th Cir. 1985) (finding that a district court's restraining order prohibiting the parties from discussing the merits of the case with the media was a prior restraint on free speech, subject to strict scrutiny). However, that does not mean that defendants cannot be held liable for such activity in a future action.

In addition, plaintiff has requested an order directing defendants to turn over to plaintiff all infringing articles in the possession of defendants for sequestration and destruction.

Under 15 U.S.C. § 1118 plaintiff can seek an order directing the destruction of seized infringing articles provided that:

> [t]he party seeking an order under this section for destruction of articles seized under section 1116(d) of this title shall give ten days' notice to the United States attorney for the judicial district in which such order is sought (unless good cause is shown for lesser notice) and

15 U.S.C. § 1118.

Here, plaintiff has not requested the destruction of the counterfeit marks and goods seized during the August 14, 2007 seizure. Rather, plaintiff is seeking delivery of any additional counterfeit goods and marks in the possession of defendants. Plaintiff does not provide any legal support for their request. Accordingly, plaintiff's request is denied.

injunction against Excelsior Trading Corp., Tony Lam, Tung Lam, and Mandy Chow is granted and denied as to defendants L.W. Import, Inc., and Highland Trading, Inc.  The Clerk is directed to transmit a filed copy of the within to all parties and the magistrate judge.

SO ORDERED.

Dated :   September 18, 2007
          Brooklyn, New York


                    By: /s/ Charles P. Sifton (electronically signed)
                            United States District Judge